UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00164-MR

| | |
|---|---|
| THOMAS HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU PROPST, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983, and Plaintiff's Motion for Leave to File an Amended Complaint and Amended Complaint, [Docs. 5, 5-1]. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 9].

## I.  BACKGROUND

Pro se Plaintiff Thomas Hughes ("Plaintiff") is a North Carolina state inmate currently incarcerated at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina. He filed this action on June 21, 2021, pursuant to 42 U.S.C. § 1983, naming FNU Propst, identified as a Correctional Officer at Foothills, as the sole Defendant. [Doc. 1]. On July 2, 2021, before initial review, Plaintiff filed a motion for leave to amend his Complaint and an

Amended Complaint.[1] [Docs. 5, 5-1]. In his Amended Complaint, Plaintiff asserts an Eighth Amendment claim based on the use of excessive force against Defendant Propst, who Plaintiff names in his individual capacity only. [Doc. 5-1 at 2, 5-6]. Plaintiff also purports to raise a due process claim based on the conduct of his related disciplinary hearing, but he does not name a defendant relative to this claim. [See id. at 3-4].

Plaintiff alleges as follows. On May 3, 2021, Defendant Propst and Officer Greene were assisting restrictive housing inmates in Plaintiff's wing with showers. [Doc. 5-1 at 2]. The showers in restrictive housing are individually secured. [See id. at 3]. Defendant Propst and Officer Greene left Plaintiff and two other inmates in the showers for an extended period. [Id.]. The inmates yelled for Propst and Greene to get them out of the showers. [Id.]. While Plaintiff was undressed in the secured shower, Defendant Propst approached the shower door and asked Plaintiff if he had a problem with the way Propst ran the wing. [Id.]. Plaintiff responded that he did not know what Propst was talking about and asked him to step away from the shower door because Plaintiff was undressed and trying to put on his underwear. [Id.]. Plaintiff put on his underwear and a verbal altercation

---

[1] The Court will grant Plaintiff's motion to amend and consider Plaintiff's Amended Complaint on initial review here.

between Plaintiff and Defendant Propst ensued. [Id. at 3]. Defendant Propst pulled out his pepper spray and sprayed Plaintiff through the secured caged shower door, spraying Plaintiff in his face and, allegedly, his genital area.[2] [Id.]. Defendant Propst then lied to the sergeant on duty, claiming that he used pepper spray on Plaintiff because Plaintiff spit on him. [Id.].

An investigation of the incident was conducted. There was also an "internal affairs" investigation. [Id. at 3]. Four other inmates and Officer Greene provided witness statements corroborating Plaintiff's version of the events. [Id. at 3-4]. Nonetheless, Plaintiff was charged with a disciplinary infraction. Disciplinary Hearing Officer (DHO) Randy Mull did not allow Plaintiff to bring live witnesses at his hearing and did not allow Plaintiff to explain the incident. Instead, DHO Mull told Plaintiff, "Whether you did it or not doesn't matter to me[.] He might not be able to prove that you spit on him, but you can't prove that you didn't either." [Id. at 4]. Despite Plaintiff's five witness statements, including Officer Greene's, and video footage supporting Plaintiff's innocence, DHO Mull found Plaintiff guilty of the infraction. [Id.]. Plaintiff immediately appealed this result, but his appeal was denied. [Id.].

---

[2] Plaintiff alleges that Defendant sprayed him "in the genatles [*sic*]," but this is inconsistent with Plaintiff's allegation that he had put on his underwear by that time. [Doc. 5-1 at 3].

Plaintiff alleges that he is a mental health level three inmate with a significant history of mental health issues. Plaintiff claims that this incident has greatly increased his anxiety and post-traumatic stress disorder symptoms due to his history of similar acts of abuse. [Id. at 5]. Plaintiff seeks monetary and declaratory relief. [Id. at 6].

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a

district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort

to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

Furthermore, the Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010).

Taking Plaintiff's allegations as true for the purposes of this initial review and drawing all reasonable inferences in his favor, Plaintiff states an Eighth Amendment claim against Defendant Propst.

## B. Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Supreme Court has repeatedly held that a prisoner has no

6

constitutional right under the due process clause to be incarcerated in a particular facility or to be held in a specific security classification, barring some showing by the prisoner that his confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hewitt v. Helms, 459 U.S. 460, 468 (1976). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Where a prison disciplinary hearing may result in the loss of good time credits, however, the inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional

7

safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Correctional Institution v. Hill, 105 S. Ct. 2768 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974)).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim for violation of his due process rights related to the conduct of his disciplinary hearing. Plaintiff does not allege that the proceedings resulted in the loss of good-time credits nor in any "atypical and significant hardship … in relation to the ordinary incidents of prison life." See Wolff, 418 U.S. 539; Sandin, 515 U.S. at 484. As such, no violation of procedural due process rights is implicated by the alleged conduct.

The Court will, however, allow Plaintiff the opportunity to amend his complaint to state a claim for relief, if such amendment is supported by the facts. Should Plaintiff amend his complaint to assert a due process claim, he must identify any party against whom he is bringing the claim as a Defendant in this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Plaintiff's

Complaint against Defendant Propst for violation of Plaintiff's Eighth Amendment rights survives initial review. The Court will allow Plaintiff thirty (30) days to amend his Amended Complaint, if he so chooses, to properly state a claim upon which relief can be granted against DHO Randy Mull. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Amended Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Amended Complaint in accordance with this Order, the matter will proceed against Defendant Propst on Plaintiff's Eighth Amendment claim only.

## ORDER

**IT IS, THEREFORE, ORDERED** that the excessive force claim against Defendant Propst survives initial review.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint [Doc. 5] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days in which to amend the Amended Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Amended Complaint, the matter will proceed against Defendant Propst as provided in this Order.

The Clerk is respectfully instructed to docket Docket No. 5-1 as Plaintiff's Amended Complaint.

The Clerk is also respectfully instructed to mail Plaintiff a blank prisoner § 1983 form.

**IT IS SO ORDERED**.

Signed: July 27, 2021

Martin Reidinger
Chief United States District Judge