# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00164-MR

THOMAS HUGHES,           )
                                  )
            Plaintiff,        )
                                  )        **MEMORANDUM OF**
vs.                    )        **DECISION AND ORDER**
                                  )
                                  )
JAMES W. PROPST,         )
                                  )
            Defendant.     )
_____ )

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment [Doc. 75] and Plaintiff's Motions for Court Order [Docs. 82, 83, 85].

## I.     PROCEDURAL BACKGROUND

Plaintiff Thomas Hughes, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his Eight Amendment rights while incarcerated at Foothills Correctional Institution ("Foothills CI") in Morganton, North Carolina, based on the use of excessive force by Defendant James Propst, a Correctional Officer at Foothills CI, in Defendant's individual capacity only.  [Doc. 1; see Docs. 11, 12].  Plaintiff alleges that, on May 3, 2021, Defendant Propst sprayed him with pepper

spray on verbal provocation alone.[1] [Doc. 12 at 2-3]. Plaintiff seeks monetary relief only, including punitive damages. [Id. at 6; see Doc. 32 at 5].

Plaintiff's Second Amended Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A and Plaintiff proceeded with his claim. [Docs. 12, 13]. On October 28, 2022, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 75]. Defendant argues he is entitled to summary judgment because Heck bars Plaintiff's claim, issue preclusion effectively resolves Plaintiff's claim, Defendant did not use excessive force on Plaintiff, and Defendant is entitled to qualified immunity. [Doc. 76]. In support of his summary judgment motion, Defendant submitted a memorandum, his own Declaration, a Declaration of Counsel, Plaintiff's North Carolina Department of Public Safety (NCDPS) Offender Information Sheet, a summary of Plaintiff's infraction history, disciplinary records related to the incident, the NCDPS Use of Force Policy, Plaintiff's medical records, and video footage

---

[1] Plaintiff's original Complaint included a four-page "Written Statement of Claim" submitted under penalty of perjury, [see Doc. 1 at 6-9], and Plaintiff's Amended and Second Amended Complaints were verified, [see Doc. 11 at 7, Doc. 12 at 7]. Accordingly, these submissions will be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

of the incident.[2]  [Docs. 76, 76-1 to 76-2, 78].

The Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 79].  Plaintiff responded to Defendant's motion. He submitted a memorandum, his own Declaration, disciplinary records related to the incident, witness statements, and Defendant's discovery responses.  [Docs. 81, 81-1 to 81-2].

This matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  <u>Id.</u>

---

[2] Defendant manually filed the video footage pursuant to the Court's Order at Docket No. 78.  [<u>See</u> 11/14/2022 Docket Entry]. The Court will hereinafter reference this footage as "Doc. 78."

3

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

## III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.

On May 3, 2021, Plaintiff was incarcerated at Foothills CI in a segregation unit. [Doc. 81-1 at ¶ 2: Hughes Dec.], and Defendant Propst was a Correctional Officer there, [Doc. 76-2 at ¶ 2]. Sometime in the evening that day, Defendant Propst and Correctional Officer Brittany Green escorted Plaintiff to the shower area, where Plaintiff took a shower. The showers in

the segregation unit are locked and secured while occupied by inmates. [Doc. 1 at 6-7]. After some time, around 8:20 p.m., Defendant Propst and Officer Greene returned to get Plaintiff and two other inmates out of the shower. [Id. at 6]. Some inmates, not including Plaintiff, had been "screaming" for Propst to get them out of the showers and Propst seemed "aggravated about something" when he approached. [Id.]. Plaintiff was in the middle shower, still partially undressed, when Propst approached the shower door. Propst asked Plaintiff if Plaintiff had a problem with the way Propst ran things. Propst and Plaintiff engaged in some verbal sparring and Plaintiff asked Propst to step away so that Plaintiff could have some privacy while getting dressed. Propst refused to move away and continued to raise his voice, accusing Plaintiff of yelling at him to get Plaintiff out of the shower. Plaintiff retorted, "If I had a problem I'd say it to your face." [Id. at 7]. Propst responded that Plaintiff was "fixing to have a real problem." After Plaintiff raised his voice and told Defendant Propst to leave him alone, Propst pulled out his pepper spray and said, "Yell again motherfucker." [Id.]. Plaintiff retorted, "Fuck you I dare you to spray me for yelling." Defendant Propst then sprayed Plaintiff "in a downward motion from [his] face to [his] torso and [the] groin area of [his] boxer" shorts. [Doc. 81-1 at ¶ 3]. Defendant Propst gave a false report regarding the incident, claiming that Plaintiff threatened him and

attempted to spit on him, to justify his use of force.[3]  [Doc. 1 at 6-7; Doc. 81-1 at ¶ 3].

The use of force by correctional staff at Foothills CI is governed by the NCDPS Use of Force Policy.  [See Doc. 76-1 at 22-38]. The Policy provides that, "[t]he use of force shall be permissible only to the extent reasonably necessary for a proper correctional objective."  [Id. at 23].  Thus, "reasonable force is authorized in order to prevent an escape or to ensure compliance with a lawful order or to protect property…."  [Id. at 23-24].  "An officer should attempt non-forcible methods of offender control, but only to the extent reasonably possible under the circumstances as they appear to that officer." [Id. at 24].  "An officer is prohibited from using force solely as a result of verbal provocation" and "shall not use force against an offender who has abandoned his resistance or who is effectively restrained." [Id.]. Pepper spray, if used, should be sprayed directly into the eyes.  [Id. at 26].

After the incident, Plaintiff was allowed to decontaminate and was medically assessed by Thomas Whisenant, RN.   [Doc. 76-1 at 10-12].

---

[3] Defendant Propst, on the other hand, attests as follows.  After Propst asked Plaintiff if Plaintiff had a problem with how Propst ran his wing, Plaintiff charged the shower door and said, "Fuck you, I'll beat your ass" and then stated he was going to spit on Defendant. Defendant then "pulled out [his] pepper spray to be ready."  At the same time that Plaintiff spit at Defendant, Defendant sprayed Plaintiff with pepper spray.  Some of Plaintiff's spit landed on Defendant's face.  [Doc. 76-2 at ¶ 3: Propst Dec.]. Defendant Propst reported the incident to his Sergeant.  [Id. at ¶ 4].

Plaintiff was cooperative and reported to Whisenant, "I didn't spit on that guy!" [Id. at 11]. Plaintiff's eyes were red and "burning," but he reported that he would be "alright." [Id.].

As a result of the incident, Plaintiff was charged with three infractions, Assaulting Staff/Throwing Liquids (A09), Threatening to Harm/Injure Staff (B18), and Profane Language (B24). [See Doc. 76-1 at 13]. Plaintiff pleaded guilty to the B18 and B24 offenses and not guilty to the A09 offense, claiming that he did not spit on Defendant Propst. [Id. at 14, 21].

An investigation of the incident was conducted.[4] [See Doc. 81-2 at 1-2, 15-16, Doc. 76-1 at 14-20]. As part of the proceedings, Petitioner requested statements of four fellow offenders who witnessed the incident, Jimmy Dye, Demonte Gilmore, Antwan Hamilton, and Kennedy Beltran. [Doc. 76-1 at 14; Doc. 81-2 at 1-2]. Their statements generally corroborated Plaintiff's version of events, especially Plaintiff's claim that he did not spit on Defendant. [See id.]. Petitioner also requested the statement of Officer Greene. [Doc. 76-1 at 14]. Officer Greene stated that she was cuffing another inmate when she heard Plaintiff and Defendant Propst arguing.

---

[4] It appears that some of the investigation records are not before the Court, including the initial incident report, the statements by the inmate witnesses, and other investigation records. Defendant appears to have selectively omitted these documents and Plaintiff primarily submitted only excerpts from a later, summary report. [See Docs. 76-1 at 13-21; Doc. 81-2 at 1-2, 12-16].

Officer Greene saw Defendant Propst "jump back and pull his OC pepper spray and sprayed offender Hughes." [Doc. 81-2 at 14]. Officer Greene did not mention Plaintiff spitting or threatening to spit on Defendant in her statement. [See id. at 6, 14].

On May 18, 2021, Captain T. Maddox reviewed the statements of those involved in the incident and the video footage. [Doc. 81-2 at 15]. He agreed with the investigating officer "that there [is] no evidence to disprove that offender Hughes did not assault Officer Propst by spitting on him." [Doc. 81-2 at 15]. Maddox continued, "The issue I have with the incident is that offender Hughes was secure in a lock[ed] shower. I also concur with the investigating officer, Officer Propst should have walked away and reported the incident to the unit Sergeant and the use of O.C. pepper spray was inappropriate." [Id.]. A "complete re-investigation" of the incident was ordered. [See Doc. 76-1 at 14].

On June 14, 2021, a disciplinary hearing was held. [See Doc. 76-1 at 14]. At the hearing, Plaintiff admitted to the B18 and B24 offenses, but maintained his innocence to the A09 offense. [Doc. 76-1 at 14]. Disciplinary Hearing Officer (DHO) Randy Mull reviewed the evidence, including statements by Defendant, Plaintiff, the four inmate witnesses, and Greene, and video footage of the incident. DHO Mull reported that the video evidence

"shows the offender appears to be at the shower door and the staff being at the door and he movers slightly and sprays the offender while the offender was in the shower."  [Id. at 14-15 (errors uncorrected)].  DHO Mull errantly reported, "It can be seen if the offender spit."[5]  [Id. at 15].  Finally, DHO Mull wrote, "[b]ased on the reporting party's statement and the investigating officers report, a finding of guilty is entered for the offense A09."  [Doc. 76-1 at 15].

On July 16, 2021, after the re-investigation had been completed and Plaintiff was found guilty of the A09 offense, Superintendent Richard Thomas reviewed the matter.  He commented as follows:

> Based on the facts and evidence disclosed by the investigation, it appears that force was not necessary.  The offender was in a locked shower and officer Propst could have simply turned and walked away.  There are also some inconsistencies in Propst's statement and what the video depicts.  An administrative investigation has been entered in ERS.

[Doc. 81-2 at 16].  On October 29, 2021, Regional Director Jeffrey Daniels reviewed the matter and agreed with Thomas' comments.  [Id.].

---

[5] It is unclear whether this was a typographical mistake by DHO Hull, and the sentence should have read, "It *can't* be seen if the offender spit." The forecast of evidence, including the footage itself, otherwise supports that the footage is inconclusive, depicting only the very edges of the incident. [See Doc. 78]. The video clearly does not show whether Plaintiff spat on Defendant Propst.  [See id.].

## IV. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)).  "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

The use of mace, tear gas, or other chemical agents "'in quantities greater than necessary or for the sole purpose of inflicting pain'" is generally recognized as a constitutional violation.  Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (quoting Williams, 77 F.3d at 763).  Pepper spray, however, is not "per se a cruel and unusual punishment," McCargo v. Mister, 462 F.Supp. 813, 818 (D. Md. 1978), and can be used to "control a recalcitrant inmate" without violating the Eighth Amendment.  Williams, 77 F.3d at 763. An Eighth Amendment violation may be found when a chemical agent is used without prior verbal command or after a prisoner has been subdued or becomes compliant with an officer's instructions.  Pevia v. Shearin, No. ELH-13-2912, 2015 WL 629001, at *10 (D.Md. Feb. 10, 2015) (collecting cases).

Here, Plaintiff contends that Defendant Propst violated Plaintiff's rights under the Eighth Amendment by pepper spraying Plaintiff while Plaintiff was locked inside a shower. Defendant contends that Plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), or resolved by issue preclusion because Plaintiff was found guilty of the spitting-related disciplinary offense. Defendant also contends that he did not use excessive force and that he is entitled to qualified immunity.

**A.    Heck**

In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any

13

> outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87 (footnotes omitted; emphasis added). Heck also applies to disciplinary convictions in prison. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). As such, any claim that "would, if established, necessarily imply the invalidity of" a disciplinary conviction is not cognizable in an action for damages under § 1983. Id. Defendant asks the Court to conclude that allowing Plaintiff "to proceed with his § 1983 claims against [Defendant] would necessarily imply the invalidity of Plaintiff's disciplinary infraction." [Doc. 76 at 6]. This is not so. Plaintiff was found guilty of an A09 offense for allegedly spitting on Defendant Propst. Prison officials, however, concluded that Defendant Propst's use of pepper spray was "inappropriate," that Defendant Propst "should have just walked away," and that "force was not necessary" – despite finding Plaintiff guilty of the spitting-related infraction. The Court, therefore, cannot conclude as a matter of law that a judgment in Plaintiff's favor would necessarily imply the invalidity of his A09 offense conviction. That is, a jury could find that Plaintiff spat on Defendant Propst and that Defendant Propst, nonetheless, pepper sprayed Plaintiff maliciously and sadistically for the purpose of causing harm and not to restore discipline. Plaintiff's claim, therefore, is not Heck-barred.

14

## B. Issue Preclusion

Defendant also argues that issue preclusion, or collateral estoppel, resolves Plaintiff's claims because Plaintiff's factual allegations in this case "are nearly identical to those litigated during his prison disciplinary proceeding." That is, Defendant contends that he is entitled to summary judgment because it has been conclusively established that Plaintiff used profanity, threatened Defendant, and spat on Defendant. [Doc. 76 at 7].

"Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Hately v. Watts, 917 F.3d 770, 776-77 (4th Cir. 2019). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata." Univ. of Tenn. v. Elliot, 478 U.S. 788, 799 (1986). To apply collateral estoppel to an issue or fact, the proponent must demonstrate that: (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the

prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.  Thompson v. Zych, 2016 WL 4532417, at *2 (W.D. Va. Aug. 29, 2016).

The Fourth Circuit, however, has declined to apply collateral estoppel to prison disciplinary proceedings.  Shepard v. Eubanks, 887 F.2d 1081, at *1 (4th Cir. 1989) ("It is doubtful that West Virginia would apply the doctrines of *res judicata* or collateral estoppel to prison disciplinary proceedings …., particularly in light of the difficulties with treating prison officials as judicial officers.") (Citations omitted). See Haskins v. Hawk, 2013 WL 1314194, at *23 (D. Md. Mar. 29, 2013) (declining to apply collateral estoppel to a factual finding in an inmate grievance proceeding and denying summary judgment for defendant in prisoner's § 1983 action).

In Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), the Second Circuit declined to collaterally estop a prisoner's § 1983 suit arising out of allegations that his due process rights were denied in a prison disciplinary proceeding, despite that the prisoner had received judicial review in state court.  Id. at 869.  The Court noted that "there is a substantial question as to whether, under New York law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in a [ ] [judicial review] proceeding, given the 'procedural laxity' of

such prison hearings, and the limited nature of substantial-evidence review." Id. (citations omitted).

Defendant claims that "[o]ther courts have used prison disciplinary proceedings to bar subsequent claims under § 1983." [Doc. 76 at 7 (citing Rogers v. Maretz, 2012 WL 1192848 at *2-3 (D.N.J. Jan. 17, 2012))]. In Rogers, however, the factual determinations incident to the disciplinary infraction at issue were not only determined by the East Jersey State Prison Administration but also affirmed by the Appellate Division of the New Jersey Superior Court and the New Jersey Supreme Court. Id. at *2. Defendant points to no other case, in this District or otherwise, applying collateral estoppel to prison disciplinary proceedings and the Court declines to do so here.

Moreover, as with the Heck-bar issue, even if Plaintiff did spit on or threaten to spit on Defendant Propst, a jury may nonetheless find that Defendant Propst sprayed Plaintiff with pepper spray in violation of the Eighth Amendment. As such, genuine issues of material fact would remain for the jury even if the Court were to collaterally estop a finding inconsistent with the factual determinations incident to Plaintiff's disciplinary convictions.

17

## C.    Excessive Force

Correctional officers may use appropriate force to restore order by compelling compliance with prison rules and procedures.  <u>Shiheed</u>, 802 Fed. App'x at 767.  Correctional officers, however, may not use pepper spray "in quantities greater than necessary or for the sole purpose of inflicting pain." <u>Iko</u>, 535 F.3d at 240 (citation omitted).  The forecast of evidence here shows that Plaintiff was locked inside a shower, partially undressed, and that Defendant deployed pepper spray not only to Plaintiff's eyes, but also across his body to his groin area. The forecast of evidence also shows that facility and regional reviewers found that Defendant Propst use of pepper spray was inappropriate, that force was not necessary, and that Defendant Propst should have walked away.  From this forecast of evidence, a reasonable jury could conclude that Defendant Propst applied force for the purpose of causing harm and not to restore order by compelling compliance with prison rules.  The Court, therefore, will deny Defendant's motion for summary judgment and leave the determination of whether Defendant Propst used excessive force to the jury.

## D.    Qualified Immunity

Defendant also claims that qualified immunity bars Plaintiff's claim. "Qualified immunity protects officers who commit constitutional violations but

who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Defendant argues that he is entitled to qualified immunity because no constitutional violation occurred.[6] [Doc. 76 at 12]. Because the jury must decide whether a constitutional violation occurred here, the Court concludes that qualified immunity does not bar Plaintiff's claim. The Court, therefore, will deny Defendant's summary judgment motion on these grounds.

---

[6] Defendant also claims, without support or argument, that "the individual rights were not clearly established such that Defendant would have reasonable notice that he was violating Plaintiff's constitutional rights." [Doc. 76 at 12]. The Court declines to further address this plainly incorrect and unsupported assertion.

## V. PLAINTIFF'S MOTIONS

Also pending are three duplicative motions by Plaintiff in which he seeks return of the exhibits he filed in support of his response to Defendant's summary judgment motion. [Docs. 82, 83, 85; see Doc. 81-2 at 1-16]. Plaintiff states that he needs the documents returned to him because he does not have copies of them or access to a copy machine and he needs them for evidence at trial. [Doc. 82 at 1, Doc. 83 at 1, Doc. 85 at 1]. The Court will deny Plaintiff's motions. The Clerk retains original copies of documents filed with the Court. Moreover, Plaintiff failed to include payment for the copies he requests. A litigant is ordinarily required to pay his own litigation expenses, even if he is indigent. See United States v. MacCollom, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress…."). The Court is not a copying service. Should Plaintiff need copies of documents filed in the docket in this matter, he may pay for the copies he seeks at the standard rate of $.50 per page. See https://www.ncwd.uscourts.gov/court-fees.

## VI. CONCLUSION

For the reasons stated herein, the Court will deny Defendant's motion for summary judgment.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 75] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Court Order [Docs. 82, 83, 85] are **DENIED.**

**IT IS SO ORDERED**.

Signed: April 24, 2023

Martin Reidinger
Chief United States District Judge